No. 89-424

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

FRANCES JEAN VUKASIN,

        Plaintiff and Respondent,

   -vs-

D. A. DAVIDSON & CO., a Montana Corp.,
and OSWALD AASERUD,

        Defendants and Appellants.

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Thomas McKittrick, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Keith Strong; Dorsey & Whitney, Great Falls, Montana
        John G. Crist; Dorsey & Whitney, Billings, Montana
        (D. A. Davidson, Inc.)
        Paul R. Haffeman; Cure, Borer & Davis, Great Falls,
        Montana    (Aaserud)

    For Respondent:

        Michael J. Best; Best Law Offices, Great Falls, Montana

Submitted on Briefs: Dec. 1, 1989

Decided: January 18, 1990

Filed:

_____
Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from an order by the District Court, Eighth Judicial District, Cascade County, Montana, denying a motion to stay proceedings in District Court. We reverse.

The controlling issue is the enforceability of an arbitration clause between D.A. Davidson and its employee.

Ms. Vukasin began working for D.A. Davidson (Davidson) on August 21, 1979. In 1985 Davidson began implementing annual performance reviews which were completed in May of each year. Ms. Vukasin signed these performance reviews in May of 1985, 1986, and 1987. In the years 1986 and 1987, Ms. Vukasin also received a bonus in May. In 1986 she received this bonus on May 1, 1986, and the performance review was signed on May 20, 1986. Both the 1986 and 1987 performance reviews contained a statement directly above the employee signature line, which provided:

> EMPLOYMENT WITH D.A. DAVIDSON & CO. IS
> SUBJECT TO ARBITRATION. Read carefully:
>
> I acknowledge that items contained in
> this Performance Review were reviewed
> with me this date. I further acknowledge
> that I may terminate my employment with
> D.A. Davidson & Co. (the "Company") at
> any time for whatever reasons just as the
> Company may terminate my employment at
> any time for whatever reasons. I also
> acknowledge and agree that any contro-
> versy between myself and the Company
> arising out of my employment or the
> termination of my employment with the

2

Company for any reason whatsoever shall be determined by arbitration in accordance with the rules and procedures of the Arbitration Committee of the National Association of Securities Dealers, Inc., or the American Arbitration Association as I may elect or in the absence of any election by me within five (5) business days of the date of a written request by the Company to make such election, as the Company elects.

On December 12, 1988, Ms. Vukasin filed a complaint in District Court against Davidson, alleging that an employee of Davidson, Mr. Oswald Aaserud, assaulted her on April 30, 1988. She alleged that Mr. Aaserud requested that her son, a former Davidson employee, meet him on Saturday, April 30, at the Davidson offices. She accompanied her son to this meeting. Upon entering the room, she alleged that Mr. Aaserud stated, "I don't deal with mothers," then grabbed her by her upper arms and shook her. In her complaint Ms. Vukasin alleged assault and battery by Aaserud, and that he was acting within the course and scope of his employment at the time of the incident, thereby rendering Davidson liable for damages. She also alleged that Davidson was negligent in hiring or retaining Aaserud as an employee. Ms. Vukasin asserted damages in the form of mental and emotional distress, pain and suffering, loss of capacity to pursue her established course of life, loss of wages, benefits, future earning capacity, and past and present medical and therapy

expenses. Mr. Aaserud was also named as a defendant in the suit.

On January 16 and 17, 1989, defendants filed motions to dismiss for lack of jurisdiction or in the alternative, to stay the proceedings in the District Court and to compel Ms. Vukasin to submit this action to arbitration. After consideration of briefs, affidavits, and documentary evidence, and after a hearing, the District Court denied the motions, refusing to enforce the arbitration agreement. This appeal by defendants followed.

The Uniform Arbitration Act, § 9 U.S.C. 1 et seq. governs the present dispute. Section 2 of that Act states:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction. . . shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

This section was discussed in Southland Corp. v. Keating (1984), 465 U.S. 1, 10, 104 S.Ct. 852, 858, 79 L.Ed.2d 1, 12, as follows:

> In enacting § 2 of the federal Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.

4

. . .

Congress has thus mandated the enforcement of arbitration agreements.

This Act was recently discussed by the Ninth Circuit in Cohen v. Wedbush, Noble, Cooke, Inc. (9th Cir. 1988), 841 F.2d 282, as follows:

> The Arbitration Act thus "reverse[s] centuries of judicial hostility to arbitration agreements," Scherk v. Alberto-Culver Co., 417 U.S. 506, 510, 94 S.Ct. 2449, 2453, 41 L.Ed.2d 270 (1974), placing such agreements "'upon the same footing as other contracts,'" id. at 511, 94 S.Ct. at 2453 (quoting H.R.Rep. No. 96, 68th Cong., 1st Sess. 1,2 (1924)), and requiring the courts to "rigorously enforce" them. Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985).
>
> The Act creates "a body of federal substantive law of arbitrability," enforceable in both state and federal courts and preempting any state laws or policies to the contrary. Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); see Southland Corp. v. Keating, 465 U.S. 1, 10-12, 16, 104 S.Ct. 852, 858-59, 861, 79 L.Ed.2d 1 (1984). The availability and validity of defenses against arbitration are therefore to be governed by application of federal standards. See Bayma v. Smith Barney, Harris Upham & Co., 784 F.2d 1023, 1024, (9th Cir. 1986).

Cohen, 841 F.2d at 285.

Davidson contends that Ms. Vukasin must submit her dispute to arbitration, pursuant to the agreement which she

signed, and is precluded from bringing suit in district court. Ms. Vukasin however, contends that she did not "knowingly" agree to arbitrate, and that there was no consideration for her agreement to arbitrate. She contends that the District Court has jurisdiction to determine the validity of the arbitration clause, which she claims is invalid. Davidson contends that the performance review was a valid employment agreement for which there was consideration, and that the arbitration clause cannot be severed from the entire agreement.

The District Court considered affidavits by Ms. Vukasin and two other Davidson employees. By affidavit Ms. Vukasin states that she was told she received her bonus for the year 1986 because the company had a good year. She also states:

> 4. At no time was I told that I was being given this money in exchange for signing an arbitration agreement. I was told that by signing the evaluation sheet that I was in agreement with the way I was evaluated as to the percentages and that no one got the top percentile.

The affidavits by the other two employees state that they were told they received the bonuses because Davidson had a good year, and that they were never told that they were signing the arbitration agreement in return for money. Stuart Nicholson, a Davidson officer, states by affidavit that the arbitration agreement was discussed, that signing it

6

was optional, but that those employees who signed received a bonus.

The District Court determined that the acknowledgment paragraph containing the arbitration clause was "not part of a document purporting to be an employment contract . . ." It also rejected as not persuasive the affidavit by Stuart Nicholson. The court found that it had jurisdiction to determine the validity of the arbitration agreement and that it was invalid in its making because the agreement was not bargained for and Ms. Vukasin did not knowingly enter it.

The document signed by Ms. Vukasin, entitled "Performance Review Form," evaluated her performance as an employee of Davidson for the period of May 31, 1986 to May 31, 1987. It detailed specific performance ratings in six areas of performance, and gave an overall performance rating, with opportunity for suggested improvements in employee performance. The document specified Ms. Vukasin's current salary with a recommended salary increase directly related to her overall performance rating. Next to the salary statement is written "Bonus $ 349.99." The above-mentioned acknowledgement containing the arbitration clause is then signed by both Ms. Vukasin and her manager. The performance review spells out a binding performance rating and a recommended salary increase. It contains Ms. Vukasin's acknowledgement that she has reviewed these items, and her acknowledgement that either

7

she or her employer may terminate employment at any time for whatever reasons. This document is clearly a binding agreement with regard to employment between Ms. Vukasin and her employer. The arbitration clause is only a part of the agreement with regard to her employment.

Having established that the arbitration clause was a part of Ms. Vukasin's employment agreement, we now turn to the issue of its enforceability. In the recent case of Larsen v. Opie (Mont. 1989), 771 P.2d 977, 46 St.Rep. 660, we discussed the enforceability of an arbitration clause in an analogous context. In Larsen, an investor sued Piper, Jaffray & Hopwood, and their broker for misrepresentation and fraud in the inducement of signing option agreements and margin contracts, which contained arbitration agreements. Larsen contended that these option agreements and margin contracts were void in their inception in that they were fraudulently induced. He contended that if the agreements were void, the arbitration clause could not be binding. Larsen also contended that the arbitration clauses were not binding since defendants did not specifically discuss these clauses with him, and because they were not bargained for agreements.

In analyzing the issue of whether the district court had jurisdiction to determine the validity of the contracts, and the arbitration clauses, this Court stated:

8

Section 4 of the [Uniform Arbitration] Act provides one of the few times when a contract containing an arbitration clause can be addressed by a court:

"A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." [Emphasis in original.]

The United States Supreme Court has discussed the issue of who is to determine issues involving arbitration and the Arbitration Act in Prima Paint Corp. v. Flood & Conklin Mfg. Co. (1967), 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270. The Supreme Court looked to the Arbitration Act for guidance, recalling that section 4 allows for judicial intervention in cases where the validity of the arbitration clause is at issue.

"Under section 4, . . . the federal court is instructed to order arbitration to proceed once it is satisfied that 'the making of the agreement for arbitration or the failure to comply [with the arbitration agreement] is not in issue.' Accordingly, if the claim is fraud in the inducement of the arbitration clause itself--an issue which goes to the 'making' of the agreement to arbitrate--the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider

9

> claims of fraud in the inducement of the
> contract generally." _Prima Paint_, 388
> U.S. at 403-404, 87 S.Ct. at 1806, 18
> L.Ed.2d at 1277.
>
> The issue is the same here. There
> is a question of whether the agreements
> between Larsen and Piper, Jaffray &
> Hopwood are void for fraud in the induce-
> ment. _Prima Paint_ has specifically held
> that issues which address fraud in the
> inducement are issues to be decided in
> arbitration. Appellant here does dispute
> the validity of the arbitration clause,
> but only in connection with the contract
> as a whole.

_Larsen_, 771 P.2d at 979-80.

In the present case, the same analysis applies. The District Court only has jurisdiction if the issue is the making of the arbitration portion of the agreement. If the issue is the validity of the entire agreement, this must be submitted to the arbitrators. _See also_ Passage v. Prudential-Bache Securities, Inc. (1986), 223 Mont. 60, 69, 727 P.2d 1298, 1303, _cert. denied_, 480 U.S. 905 (1987), ("Issues which go to the formation of the contract as a whole may properly be decided by an arbitrator").

Ms. Vukasin's contentions that there was no consideration for her agreement to arbitrate, and that she was not told that her bonus was in exchange for her agreement to arbitrate assumes that the arbitration clause is severable from the entire agreement. We find no merit to this assumption. "[W]here the agreement to arbitrate is integrated into

10

a larger unitary contract, the consideration for the contract as a whole covers the arbitration clause as well." W.L. Jorden & Co., Inc. v. Blythe Industries, Inc. (1988), 702 F.Supp. 282, 284. Accord Sarnoff v. American Home Products Corp. (7th Cir. 1986), 798 F.2d 1075 (court rejected argument that a choice of law provision which was part of a larger contract was not enforceable because it was not separately bargained for, stating that this argument erroneously "assumes that every provision in a contract must have a separately bargained for and stated consideration"); Kroblin Refrigerated Xpress, Inc. v. Pitterich (3rd Cir. 1986), 805 F.2d 96, 108-09 (consideration for entire sales agreement acted as consideration for non-competition agreement which was integral part of sales agreement). We conclude that the validity of the arbitration clause is not severable from the validity of other parts of the employment agreement. Since the District Court has no jurisdiction to determine the validity of the entire agreement, any such issues must be submitted to arbitrators.

Ms. Vukasin also contends that the allegation of assault is outside the scope of the arbitration clause since this is not an area one would expect to be encompassed by an arbitration agreement. However, the clause which Ms. Vukasin signed requires her to arbitrate:

11

> any controversy between myself and the
> Company arising out of my employment or
> the termination of my employment with the
> Company for any reason whatsoever.

Courts have held similar broad arbitration provisions to encompass tort claims. In Zolezzi v. Dean Witter Reynolds, Inc., (9th Cir. 1986), 789 F.2d 1447, 1449-50, the court held that Zolezzi had agreed to arbitrate intentional tort claims of defamation and invasion of privacy which involved events occurring one year after he quit working for Dean Witter when he had agreed to arbitrate "any controversy . . . arising out of the employment or termination of employment" he had with Dean Witter. In Aspero v. Shearson American Express, Inc. (6th Cir. 1985), 768 F.2d 106, 109, cert. denied, 474 U.S. 1026 (1985), the court held that an ex-employee's claims of defamation, invasion of privacy, and intentional infliction of emotional distress against Shearson were within the scope of a clause requiring the arbitration of "any controversy . . . arising out of the employment or termination of employment." In McGinnis v. E.F. Hutton and Co., Inc. (6th Cir. 1987), 812 F.2d 1011, the court held that allegations of outrageous conduct, breach of contract, and retaliatory discharge were arbitrable where clause required arbitration of "any controversy . . . arising out of the employment or termination of employment."

In Moses H. Cone Hospital v. Mercury Const. Corp. (1982), 460 U.S. 1, 24-25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765, 785, the United States Supreme Court emphasized that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration," further stating:

> Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.
>
> . . .
>
> The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

In the present case, the incident occurred on Davidson's premises, involved a Davidson employee, and culminated in Ms. Vukasin terminating her employment with Davidson. The present dispute arises out of the termination of her employment. We conclude that the present controversy is clearly subject to the arbitration agreement. We reverse the order by the District Court and direct the court to grant

defendants' motions to stay the proceedings pending arbitration.

_____
                    Justice

We Concur:

_____
        Chief Justice

_____

_____

_____

_____
              Justices

14